# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| NORDIC INTERACTIVE TECHNOLOGIES LLC,<br><br>        Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>        Defendants. | Case No.: 6:20-CV-00064 (ADA)<br><br>Judge Alan D. Albright<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF

In its Opening and Responsive Briefs, Nordic clearly demonstrated that its proposed constructions were accurate and faithful to the specification with a directed goal of resolving disputes and assisting the judge/jury. Three disputed terms remain: "call initiation signals" in U.S. Patent No. 6,345,095 ("'095 Patent) and "middleware software" and "the middleware layer" in U.S. Patent No. 7,590,097 ("'097 Patent").

### A. "middleware software" from the '097 Patent

| Nordic's Construction | Samsung's Construction |
|---|---|
| Software providing discovery of applications and/or services | "a software layer with an API that negotiates the communication between two applications to help an application find a counterpart application with the correct role" |

Samsung's arguments defending its proposed construction and criticizing Nordic's construction deserve little consideration. Samsung seems to again beg the Court to ignore the plain language of the claims and import additional language from the specification into the language of the claims. Accordingly, Samsung's construction does not answer any questions, resolve any disputes, or provide any guidance to the jury. By contrast, Nordic's construction is taken directly from the explicit language of the claims and supported by the specification. Nordic's construction is aimed at complying with the specification and the explicit language of the claims in the '097 Patent with a directed goal of assisting the judge/jury in interpreting the disputed terms.

Samsung tries to argue that Nordic's proposed construction is already in the language of the claims, and therefore construing "middleware software" with the same language would be redundant and is evidence against Nordic's construction. *See* Document 38 in Court Docket, 9. This argument by Samsung ignores another principle set forth in *Phillips*: namely that "the claims themselves provide substantial guidance to the meaning of particular claim terms."

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314. This alone should convince the Court to adopt Nordic's position.

Further, Samsung has not provided any rationale for narrowing the explicit language of the claims to construe "middleware software" as an "API that negotiates the communication between two applications to help an application find a counterpart application with the correct role." Therefore, Samsung's construction completely ignores the explicit language of the claims and attempts to add language from the specification into the reading of the claim language. Accordingly, Samsung's construction is unnecessarily complicated and fails to provide the guidance necessary to assist the judge and jury in claim construction.

Moreover, Samsung argues that "the extrinsic evidence also does not support Nordic's construction" because of a misrepresentation of the definitions from a technical dictionary. *See* Document 38 in Court Docket, 10-11. In fact, it is Samsung that is misrepresenting the definition of the term "middleware software" when read in conjunction with the language of the claims in the '097 Patent. Specifically, Samsung should be reminded that "[t]he court must ensure that any reliance on dictionaries accords with the intrinsic evidence: the claims themselves, the specification, and the prosecution history." *Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, 1348 (Fed. Cir. 2005). And further, "… in those circumstances where reference to dictionaries is appropriate, the task is to scrutinize the intrinsic evidence in order to determine the most appropriate definition." *Id*. at 1349. Accordingly, merely selecting the definition that aligns with Samsung's construction is not only contrary to precedent, but simply incorrect. Applying this principle from *Free Motion Fitness, Inc. v. Cybex Int'l*, the most important part of the intrinsic evidence - the claims - clearly recite that "the middleware software [is] configured for providing application and service discovery." '097 Patent, 12:63-64. The more widely accepted dictionary definition of "middleware", namely "software that sits between two or more types of software and translates information between them", is

consistent with the claim language. Document 35-3 in Court Docket, ¶ 29; Document 35-4 in Court Docket, 6-7.

Further, Samsung's argument that Nordic's expert declaration is irrelevant and "fails to articulate the proper legal framework" is not only disrespectful to a technical expert that has more than forty years of experience in the field, but also blatantly inconsiderate of what an expert opinion must do/not do. *See* Document 38 in Court Docket, 7-8. Specifically, Samsung is misapplying well-accepted case law that "expert opinions that offer legal conclusions are generally inadmissible because they do not 'assist the trier of fact,' as expert opinions must." *United States v. Z Inv. Props., LLC,* No. 17-cv-4405, 2018 U.S. Dist. LEXIS 56483, at *8, 121 A.F.T.R.2d (RIA) 2018-1317 (N.D. Ill. Apr. 2, 2018) (striking the paragraphs from an expert declaration that state improper legal conclusions). In contrast, Dr. Gitlin's Declaration is offered as an expert opinion of how a POSITA would understand the disputed terms. Dr. Gitlin's Declaration is not offered as a legal conclusion on any matter. Accordingly, Samsung's statement that "Dr. Gitlin fails to even articulate the proper legal framework" is not to be read as a negative remark, but instead agrees that Dr. Gitlin's Declaration is not offering any legal conclusions.

Therefore, based on the arguments set forth by Nordic in this brief along with Nordic's Opening Claim Construction Brief and Nordic's Responsive Brief, Nordic's proposed construction that "middleware software" should be construed as software providing discovery of applications and/or services is consistent with the intent and the intrinsic evidence of the '097 Patent.

B. **"middleware layer" from the '097 Patent**

| Nordic's Construction | Samsung's Construction |
|---|---|
| Software layer that includes middleware software | This term is indefinite |

As previously mentioned, Nordic and Samsung were close to an agreement on this term but due to Samsung's continuously deliberate misconstruction of the term "middleware layer" in the dependent claims, a dispute still exists.

To start, Nordic has attached both the Certificate of Correction filed on November 18, 2020 (attached as Ex. 1) and the subsequent approval from the USPTO regarding the Certificate of Correction (attached as Ex. 2). In the Certificate of Correction, "middleware layer" is replaced with "middleware software" where it appears in the dependent claims. Ex. 1. Even after providing Samsung the Certificate of Correction, explaining the clear intent of the '097 Patent regarding the term "middleware layer" in the dependent claims by citing to the same part of the prosecution history of the '097 Patent that Samsung cites to, and informing Samsung of the approval of the Certificate of Correction from the USPTO, Samsung continues to argue that "middleware layer" be construed as "middleware software." Not only is this a complete misconstruction of the term, but it seems to be a deliberate action by Samsung to not come to an agreement with Nordic regarding this term.

Additionally, regarding the prosecution history of the '097 Patent, Nordic again points to the Amendment made by the Patentee on October 22, 2008 that replaced the term "middleware layer" with "middleware software" in the independent claim but left the term "middleware layer" untouched in the dependent claims. *See* Document 38-7 in Court Docket. Even Samsung admits that this was an obvious error in the Amendment because Samsung states that "[r]egardless of why, however, the fact remains that the applicants made the change in the independent claims. And that change was **inadvertently** not carried through to the dependent claims." Document 38 in Court Docket, 19 (emphasis added). As emphasized in the previous statement, Samsung admits that the change made to the independent claim to replace "middleware layer" with "middleware software" was inadvertently not done to the dependent claims but then continues to argue that the term "middleware layer" should be construed as

5

"middleware software." This is blatantly incorrect and goes against Samsung's own statements made in their Responsive Brief.

In further support of replacing the term "middleware layer" with "middleware software" in the dependent claims, Nordic requests the court to follow the ruling set forth in *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003) that a district court can correct a patent if: "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." This ruling cited to the Supreme Court case of *I.T.S. Rubber Co. v. Essex Rubber Co.*, that held that, in a patent infringement suit, the courts could properly interpret a patent to correct an obvious error. *Id.* at 1354 citing to *I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 71 L. Ed. 335, 47 S. Ct. 136, 1927 Dec. Comm'r Pat. 228 (1926). Looking first at the specification, "middleware layer" and "middleware software" are used as separate terms with separate distinct interpretations that are not interchangeable. For example, in the '097 Patent, an embodiment is described wherein "the middleware layer **includes** dedicated middleware software providing advanced application and service discovery and execution." '097 Patent, 10:8-10 (emphasis added). Accordingly, it would be simply incorrect to follow Samsung's construction that "middleware layer" is "middleware software."

Supported by the specification and an expert declaration, Nordic has established in the previous briefs that "middleware layer" has a concrete construction that differs from the construction of "middleware software." Specifically, Nordic re-asserts that the term "middleware layer" be construed as a software layer that includes middleware software. Rather than explaining why Nordic's construction of "middleware layer" should not be considered, Samsung, in their Responsive Brief, makes a general statement that Nordic's construction has no support. Document 38 in Court Docket, 20. Accordingly, Samsung has not even attempted

to lessen the court's burden by considering Nordic's arguments in relation to the term "middleware layer." Therefore, should the Court not correct and replace the term "middleware layer" with "middleware software," Nordic requests the Court to construe "middleware layer" as a "software layer that includes middleware software."

C. "call initiation signals" from the '095 Patent

| Nordic's Construction | Samsung's Construction |
|---|---|
| Plain and Ordinary Meaning<br>or<br>Part of a telephone number | "any signal indicating that a calling party is going to place a telephone call" |

Samsung contends that Nordic's construction is "contrary to the dependent claims, and is so narrow that it only covers two embodiments in the specification."

Regarding the embodiments in the specification, Samsung should be again be reminded that "claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into the claims." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002). "[W]hile… claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims." *Comark Communs., Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). More directed to Samsung's argument, "although the specification often describes very specific embodiments of the invention, [the court has] repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. Further, even if construction of the term "call initiation signals" was solely based on all embodiments described in the '095 Patent, as Samsung puts forth, Nordic's construction is strongly supported. Looking to an excerpt from the '095 Patent, cited by Samsung in their Opening Claim Construction Brief and by Nordic in Nordic's Responsive Brief, preferred embodiments are described wherein call initiation signals include: a full telephone number, a telephone number without an area code, a subscriber number without an area code or an

exchange code. *See* '095 Patent, 4:66-5:10. Only when the '095 Patent begins describing **alternative preferred embodiments** does the introduction of call initiation signals that includes activation sequences occur. *See Id.* at 5:10-18 (emphasis added). Even with these alternative preferred embodiments, the '095 Patent utilizes specific language in the specification that the call initiation signals **may** include particular activation sequences, whereas when describing the preferred embodiments with call initiation signals as being at least part of a telephone number, the '095 Patent uses more exact language such as "that include[s]." *Id.* This is not merely a coincidence that occurs in the patent, but instead reflects the actual intent of the patentee when drafting the '095 Patent.

Additionally, Samsung argues that Nordic's construction of the term "call initiation signals" excludes two-thirds of the words in the term. Not only is this argument confusing, but doesn't consider the entirety of the term when attempting to make a construction. The term itself specifies that the signal is a call initiation signal, but Samsung seems to want to generalize the word signal in the term "call initiation signals" as being any signal.

Further, regarding Nordic's expert declaration, Samsung, again, inexplicably dismisses Dr. Gitlin's statements in a disrespectful manner without giving consideration to statements made by an expert that has more than forty years of experience in the field. Samsung, incorrectly and without any support, states that Dr. Gitlin's statements are conclusory and "at odds with the claims and the specification." Document 38 in Court Docket, 24. Samsung does not provide any specific citations to Dr. Gitlin's declaration in relation to the term "call initiation signals" but merely cites to the *Phillips* case to generally state that Dr. Gitlin's statements should be discounted.

Therefore, in view of the specification of the '095 Patent and Dr. Gitlin's Declaration provided with the Nordic's Opening Claim Construction Brief, Nordic requests the Court to

give the term its plain and ordinary meaning or construe "call initiation signals" to include at least "part of a telephone number."

**D. Conclusion**

For the above reasons, Nordic respectfully requests the Court adopt its proposed constructions.

Dated:  December 11, 2020		Respectfully submitted,

**PARKER, BUNT & AINSWORTH, P.C.**

*/s/ Robert Christopher Bunt*

Robert Christopher Bunt
State Bar No. 00787165
Charles Ainsworth
State Bar No. 00783521
100 E. Ferguson, Suite 418
Tyler, TX 75702
903/531-3535
E-mail: charley@pbatyler.com
E-mail: rcbunt@pbatyler.com


William Cory Spence
Jason Wejnert
SpencePC
515 N. State St., 14th Floor
Chicago, Illinois 60654
312-404-8882
william.spence@spencepc.com
jason.wejnert@spencepc.com

**Attorneys for Plaintiff Nordic Interactive Technologies LLC**

## CERTIFICATE OF SERVICE

I hereby certify that, on December 11, 2020, a true and correct copy of the foregoing was served to all counsel of record via who have consented to ECF notices.

/s/ *Robert Christopher Bunt*
Robert Christopher Bunt