IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| NORDIC INTERACTIVE TECHNOLOGIES LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants.* | Civil Action No. 6:20-CV-00064<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

Page

I. Introduction ................................................................................................................1

II. Argument ...................................................................................................................2

    A.    '097 Patent Terms ...............................................................................................2

        1.    "middleware software" (Claims 19-24) ......................................................2

            a.    Nordic does not address the evidence of lexicography ...................2
            b.    The law cited by Nordic does not support its position ....................3

        2.    "the middleware layer" (Claims 20-21) ......................................................5

    B.    '095 Patent Term ................................................................................................7

        1.    "call initiation signals" (Claims 16, 30) .....................................................7

            a.    Nordic does not dispute that its construction is inconsistent with dependent Claim 18 ................................................................7
            b.    Nordic's argument that there is no lexicography is a straw man ..................................................................................................8
            c.    Nordic's proposal not to construe the term and instead only find "plain and ordinary meaning" should be rejected ...................8

III. Conclusion .................................................................................................................9

# TABLE OF AUTHORITIES

Pages(s)

**Cases**

*Electro Med. Sys., S.A. v. Cooper Life Sciences,*
  34 F.3d 1048 (Fed. Cir. 1994) ...........................................................................3, 4

*H-W Tech., L.C. v. Overstock.com, Inc.*,
  758 F.3d 1329 (Fed. Cir. 2014) ..............................................................................5

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
  902 F.3d 1372 (Fed. Cir. 2018) ..............................................................................8

*Novo Indus., L.P. v. Micro Molds Corp.*,
  350 F.3d 1348 (Fed. Cir. 2003) ..............................................................................6

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ..............................................................................9

*Smartphone Techs. LLC v. Research in Motion Corp.*,
  No. 6:10-CV-74-LED-JDL, 2012 WL 489112 (E.D. Tex. Feb. 13, 2012) ...............4

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
  299 F.3d 1313 (Fed. Cir. 2002) ...........................................................................3, 4

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  723 F.3d 1363 (Fed. Cir. 2013) ...........................................................................3, 4

**Statutes**

35 U.S.C. § 254 .........................................................................................................5

I.      INTRODUCTION

Like its Opening Brief, Nordic's Responsive Brief (Dkt. No. 37, "Nordic's Responsive Br.") is again replete with contradictions and misapplied law.  For example, Nordic now argues (for the first time) that the Court should "replace the term 'middleware layer' with 'middleware software,'" (*id.* at 8) but, at the same time, that "middleware layer" does **not** mean "middleware software" **in the claims as written.**  Instead, Nordic argues that, if the Court does not correct the term "middleware layer" to "middleware software," the Court should then "adopt the construction that the middleware layer is 'software layer that includes middleware software.'" *Id.*  Notably, Nordic continues to advance this alternative position even though it stated in a recent request for correction with the Patent Office that the dependent claims "do not make sense," unless "middleware layer" is "middleware software" — which is what Samsung has been saying all along.

For the term "call initiation signals," Nordic flips the law of dependent claims on its head.  In particular, Nordic's construction would render independent Claim 16 narrower than dependent claim 18 by excluding non-number symbols like "#" and "*" from the meaning of "call initiation signals."  Further, Nordic's assertion that Samsung's construction imports limitations from the dependent claims is incorrect on its face.  Specifically, Samsung's construction (evident by its plain language) does not **require** the limitations in the dependent claims (e.g., symbols like "#" and "*"), but rather it is **broad** enough to include them — consistent with the canons of construction for a term in an independent claim.

Ultimately, the more Nordic has briefed its positions, the clearer it has become that those positions have no basis in fact or law and so should be rejected.  Samsung's claim constructions should be adopted.

## II.     ARGUMENT

### A.     '097 Patent Terms

#### 1.     "middleware software" (Claims 19-24)

| Term | Samsung's Construction | Nordic's Construction |
|---|---|---|
| "middleware software" | "a software layer with an API that negotiates the communication between two applications to help an application find a counterpart application with the correct role" | "software providing discovery of applications and/or services" |

##### a.     Nordic does not address the evidence of lexicography

In its Responsive Brief, Nordic states that "the patentee in the '097 Patent has not expressed any desire to give the term 'middleware software' a special definition." Nordic's Responsive Br. at 6. Nordic does not cite to any intrinsic evidence or provide any reasoning to support this conclusory statement. In particular, though Nordic argues that Samsung's construction improperly imports limitations from a particular embodiment into the claims, it does not explain how that is true or why the passage cited by Samsung is not lexicography. *See id.* at 5-6. For example, Nordic has not (and cannot) identify any embodiments that fall outside the definition of "middleware software" in the lexicographic passage cited by Samsung. *Compare* Dkt. No. 34 ("Samsung's Opening Br.") at 6-7 (detailing every occurrence of middleware software/embodiment). More broadly, Nordic has not pointed to any intrinsic evidence that would contradict Samsung's showing that the cited passage (reproduced again below) is lexicography:[1]

> Middleware software **is** a software layer with an API that negotiates the communication between two applications to help an application find a counterpart application with the correct role.

---

[1] Even before briefing began, Samsung explained its position to Nordic and cited the definition in the specification. Yet, after having submitted two briefs, Nordic still has not explained why that passage is not lexicography.

Samsung's Opening Br. at 6 (citing '097 Patent at 6:39-42 (emphasis added)).

As noted in prior briefing, the patentee's lexicography governs, and so Nordic's arguments regarding importing limitations from the specification are irrelevant.[2] *See id.* Strangely, however, Nordic now asserts that the term is "plainly defined in the claims…," suggesting that while there is no lexicography in the specification, somehow there is lexicography in the claims themselves. Nordic's Responsive Br. at 6. Like its other conclusory assertions, however, Nordic provides no legal basis or any reasoning to support this argument. In any event, Nordic does not even adopt the definition that it says is in the claims. Rather, Nordic broadens this purported definition (again without explanation) and proposes that middleware software means "software providing discovery of applications **and/or** services."[3]

### b. The law cited by Nordic does not support its position

Nordic cites *Electro Med. Sys., S.A. v. Cooper Life Sciences,* 34 F.3d 1048, 1054 (Fed. Cir. 1994) and *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1326 (Fed. Cir. 2002) for the proposition that the Court should not import embodiments into the claims. Notably, Nordic then proceeds to violate this proposition by pointing to specific embodiments, while ignoring others, as support for its construction. *See* Nordic's Responsive Br. at 6; *cf.* Samsung's Responsive Br. at 4-6.

In any event, Samsung agrees that there is a general rule against importing embodiments into the claims. However, lexicography is an exception to that rule. *See, e.g., Teva Pharms. USA,*

---

[2] The arguments are incorrect, in any event. *See* Dkt. No. 38 ("Samsung's Responsive Br.") at 2-4. In particular, though Nordic accuses Samsung of importing limitations from the specification, it is only Nordic who cherry-picks (and modifies without explanation) language from specific embodiments into a construction. *Id.*

[3] The clause within Claim 19 that Nordic contends is a definition of middleware software states: "the middleware software configured for providing application **and** service discovery."

3

*Inc. v. Sandoz, Inc.*, 723 F.3d 1363, 1373 (Fed. Cir. 2013); Samsung's Opening Br. at 2, 5-6 (citing, e.g., *Smartphone Techs. LLC v. Research in Motion Corp.*, No. 6:10-CV-74-LED-JDL, 2012 WL 489112, at *4 (E.D. Tex. Feb. 13, 2012) ("is" signifies lexicography); Samsung's Responsive Br. at 2-4.

Neither *Electro Med.* nor *Teleflex* involved lexicography. In *Electro Medical*, the Federal Circuit affirmed the district court's rejection of a construction that was limited to certain features in the embodiments, where the patentee never argued lexicography. *See Electro Med Sys.*, 34 F.3d at 1054. In contrast with *Electro Medical*, Samsung relies on lexicography.[4]

Additionally, in *Teleflex*, the Federal Circuit rejected the argument that where only one embodiment is disclosed in the specification, claim terms are limited to the embodiment disclosed. *See Teleflex*, 299 F.3d at 1326-27. Notably, the Federal Circuit explained that the disputed term was "not defined in the specification or in the prosecution history." *Id.* at 1327. Again, by contrast, the specification in this case provides lexicography of the term.

Accordingly, Nordic's arguments have no basis in the evidence or the law. In contrast, Samsung's proposed construction is, verbatim, the patentees' lexicographical definition in the specification, and so should be adopted.

---

[4] Incidentally, the lexicographical definition here is also consistent with every embodiment. Samsung's Opening Br. at 6-7.

### 2. "the middleware layer" (Claims 20-21)

| Term | Samsung's Construction | Nordic's Position |
|---|---|---|
| "the middleware layer" | "the middleware software" | New argument:<br><br>Nordic now contends that "the middleware layer" should be "corrected to be" or "replaced with" "the middleware software"<br><br>Alternatively: if the term is not corrected, then "middleware layer" means "software layer that includes middleware software" |

In its Responsive Brief, Nordic changes its argument. It particular, Nordic states that it has now "considered the intrinsic evidence and Samsung's arguments and asserts that this term should be replaced with 'middleware software' where it appears in dependent Claims 20-21."[5] Nordic's Responsive Br. at 7. Nordic also states that it filed a request for a Certificate of Correction in the Patent Office seeking to make that replacement. *Id.* at n. 3. In that request, Nordic asserts that the "**dependent claims do not make sense without the correction**." Ex. 1[6] at 1.[7] (emphasis added).

---

[5] Samsung provided the same evidence and arguments during the Parties' meet-and-confer before opening briefs were due.

[6] "Ex." refers to the Exhibits attached to the Declaration of Jin-Suk Park, filed concurrently herewith.

[7] On December 1, 2020, the Patent Office approved the request. Ex. 2. As the Court may be aware, the correction is technically not operative in the instant litigation. *See e.g., H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1334 (Fed. Cir. 2014) ("Based on the plain language of the statute [35 U.S.C. § 254], this court has specifically held that '[t]he certificate of correction is only effective for causes of action arising after it was issued.'") (citation omitted). Accordingly, to the extent the Court agrees with the correction, it must, e.g., adopt the correction explicitly in the case. Moreover, to the extent the Court adopts the correction (which Samsung agrees with), Samsung believes the dispute as to the construction or replacement of the term "[the] middleware layer" would be moot.

Despite what appears to be an agreement between the parties that "[the] middleware layer" is "[the] middleware software," Nordic has stated during subsequent meet-and-confers that they are actually not in agreement with Samsung.

First, Nordic stated that it did not agree that "[the] middleware layer" should be **construed** to be "[the] middleware software" (i.e., Samsung's position) but rather that the term must be **corrected** to be "[the/a] middleware software." It is unclear what difference Nordic sees between "correction" and "construction" of the term "middleware layer" for the purposes of this case, but Nordic now insists on correcting, rather than construing, the term, despite the fact that Nordic did not raise the doctrine of judicial correction in its Responsive Brief. In any event, whether the term is corrected under the doctrine of judicial correction or construed under the doctrine of implied antecedent basis (as, e.g., discussed in Samsung's Responsive Br. at 10-16),[8] "[the] middleware layer" in the dependent claims should mean "[the] middleware software."

Second, Nordic continues to assert that, in the alternative, "[the] middleware layer" should be construed as "software layer that includes middleware software."[9] This is despite the fact that Nordic now concedes that the recitation to "middleware layer" should be corrected to "middleware software." It is inexplicable that Nordic seeks to provide a different, alternative construction for "middleware layer" given Nordic told the Patent Office in its request for correction that the claims

---

[8] Based on the intrinsic evidence, Samsung believes that either legal basis can be used to reach the same result. *See* Samsung's Responsive Br. at 10-15; *see also, e.g., Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003) (holding that, under the doctrine of judicial correction, the court may correct a claim when "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims.").

[9] Nordic argues that "[the] middleware layer" should be replaced with "middleware software" but also that the "Court should adopt the construction that the middleware layer is 'software layer that includes middleware software.'" *See* Nordic's Responsive Br. at 8.

"do not make sense" unless "middleware layer" means "middleware software." Ex. 1 at 1. Nordic's Responsive Brief provides no additional argument for its alternative construction, other than simply stating that the Court should adopt it. Nordic's Responsive Br. at 6-8. Indeed, aside from the issues of construction vs. correction above, the alternative construction itself is wrong for reasons set forth in Samsung's prior briefs. *See* Samsung's Opening Br. at 7-8; Samsung's Responsive Br. at 9-17.

### B. '095 Patent Term

#### 1. "call initiation signals" (Claims 16, 30)

| Term | Samsung's Construction | Nordic's Construction |
|---|---|---|
| "call initiation signals" | "any signal indicating that a calling party is going to place a telephone call" | plain and ordinary meaning, or "part of a telephone number" |

##### a. Nordic does not dispute that its construction is inconsistent with dependent Claim 18

Nordic appears to ignore the fundamental principle that an independent claim must be broad enough to cover the features recited in its dependent claims. *See* Samsung's Opening Br. at 10-11; Samsung's Responsive Br. at 19. Indeed, Nordic does not (and cannot) dispute that its construction would be in conflict with dependent Claim 18. *Id.* Instead, Nordic argues that Samsung "is incorrectly attempting to import the limitation of dependent Claims 17 and 18 into that of independent Claim 16." Nordic's Responsive Br. at 3. This argument is wrong.

In particular, Samsung's construction plainly, on its face, does not require (or even contain language) that "call initiation signals" be the "#" or "*" elements of dependent Claim 18. Rather, Samsung's proposed construction for "call initiation signals" is **broad enough to include** those elements, but not otherwise limit them. Indeed, Nordic's assertion that "the dependent claims signifies [sic] that call initiation signals in Claim 16 may include but not require an activation

7

sequence" (*id.* at 4) is entirely consistent with Samsung's construction. That is, Samsung points to dependent Claims 17 and 18, not to import limitations, but rather to show: (1) that Samsung's construction is broad enough to encompass those elements; and (2) in contrast to Samsung's position, Nordic's "part of a telephone number" construction would **exclude** those same elements (and so would be contrary to the law). *See, e.g., Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1378 (Fed. Cir. 2018) (reversing claim construction that excluded/was contrary to limitations recited in dependent claims).

### b. Nordic's argument that there is no lexicography is a straw man

Nordic sets up a straw man argument when it asserts that, because the term "call initiation signals" is not governed by any lexicography, Nordic's proposed plain and ordinary meaning should be adopted. Specifically, **Samsung never argued that there was lexicography** defining "call initiation signals." Instead, Samsung has always advanced a plain and ordinary meaning of "call initiation signals" and simply demonstrated that its proffered construction was consistent with **all** of the embodiments in the specification and **all** the dependent claims. *See e.g.,* Samsung's Opening Br. at 9-11; Samsung's Responsive Br. at 17-20. This is again in contrast to Nordic's construction which excludes embodiments as well as elements in the dependent claims. *See id*. Accordingly, there is no dispute about lexicography with this term.

### c. Nordic's proposal not to construe the term and instead only find "plain and ordinary meaning" should be rejected

Nordic initially focused its argument on asserting that "call initiation signals" should be construed as "part of a telephone number," but, in its Responsive Brief, Nordic appears to shift its emphasis to advocate for the "plain and ordinary meaning" without an explicit construction. *Compare* Nordic's Opening Br. at 4-6 to Nordic's Responsive Br. at 1-4. Undoubtedly, Nordic hopes that with just a construction of "plain and ordinary meaning," it can later argue to a jury that

the term should be narrowly understood as "part of a telephone number." As Samsung explained in its Responsive Brief, this would be improper, and the dispute should be resolved by the Court with an express construction. *See e.g.,* Samsung's Responsive Br. at 17-18; *see also O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it").

## III. CONCLUSION

For the above reasons, Samsung respectfully requests that the Court adopt its proposed constructions.

Dated: December 11, 2020

By: */s/ Jin-Suk Park*
Jin-Suk Park
Marc A. Cohn (pro hac vice)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: 202-942-5000
Jin.Park@arnoldporter.com
Marc.Cohn@arnoldporter.com

Ryan J. Casamiquela (pro hac vice)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel: 415-471-3373
Ryan.Casamiquela@arnoldporter.com

Michael E. Jones
State Bar No. 10929400
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, TX 75702
Tel: 903-597-8311
mikejones@potterminton.com

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on December 11, 2020 with a copy of this document via electronic mail.

*/s/ Jin-Suk Park*
Jin-Suk Park